## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RIMKUS CONSULTING GROUP, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 09-cv-3167** |
| **JAMES DARREN BALENTINE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Motions to Dismiss or Alternatively to Transfer Venue of Defendants Darren Balentine ("Balentine"), U.S. Forensics and Associates ("USFA"), and William Janowsky ("Janowsky") ("Defendants" collectively) (Doc. Nos. 7 and 21).[1] For the reasons stated below, the Court is of the opinion that these Motions should be denied.

## I.    BACKGROUND

Rimkus Consulting Group, Inc. ("Rimkus") is a consulting company with its principal place of business in Houston, Texas. (Pl. Compl., Doc. No. 1, ¶ 1.) Rimkus' primary business is to provide investigative forensic engineering services for use in analyzing property damage and loss from storms, fires, industrial accidents, and construction defects. (*Id*. ¶ 3.) In June 2005, Defendant Balentine was hired by Rimkus as National Catastrophe Manager, and was involved in Rimkus' Catastrophic Operations ("CAT") as well as national marketing efforts. (*Id*. ¶ 8.) Pursuant to this, Balentine signed

---

[1] The issues now before the Court were filed as two separate Motions. Although the Motions pertain to different Defendants, they raise identical legal issues. As such, the Court considers these two Motions in tandem.

an Employment Agreement with Rimkus ("Agreement"). (*Id*. ¶ 12.) Rimkus alleges that, while so employed, Balentine was given access to trade secrets and proprietary information created and compiled by Rimkus, such as investigative methods, pricing structures, marketing strategies, training programs, and clientele networks. (*Id*. ¶ 9.) In September 2008, Balentine resigned from his employment with Rimkus.  (*Id*. ¶ 10.)

In October 2008, Balentine became a fifty percent owner of Defendant USFA, which, according to Rimkus, is a direct competitor of Rimkus. (*Id.*). Defendant Janowsky owned the other fifty percent of USFA. (*Id*.) Rimkus alleges that Janowsky was instrumental in soliciting Balentine and one other Rimkus employee, Erica Richards ("Richards"), away from Rimkus to join USFA. (*Id*. ¶ 15.) Balentine assumed the position of Director of Operations for USFA. Rimkus alleges that USFA is affiliated with U.S. Forensics, L.L.C. ("USF"), another competitor of Rimkus. (*Id*. ¶ 11.) Three of the four owners of USF are former Rimkus employees. The fourth owner is Janowsky. (*Id.*) Rimkus alleges that USFA and USF share information and operate as "virtual alter egos" of one another. (*Id*. ¶ 15.) Balentine moved from USFA to USF at the end of October 2009. (Pl. Resp., Doc. No. 14, at 4.)

Rimkus alleges that Balentine has "transmitted confidential and protected client information of Rimkus to USF" and "taken other Rimkus confidential and trade secret information and used it in his work for USFA." (*Id*. ¶ 13.) More specifically, Rimkus alleges that Balentine used its protected information to allow USFA to acquire several catastrophe projects in Texas in the wake of Hurricane Ike. (Pl. Resp., Doc. No. 14, at 5.) According to Rimkus, USFA was formed to mirror Rimkus and was operated using confidential and trade secret information wrongfully taken from Rimkus. (*Id*. ¶ 16.)

Rimkus further alleges that Janowsky was aware that both USF and USFA were formed and operated on the basis of trade secret information wrongfully misappropriated from it. (*Id*. ¶ 15.) Rimkus alleges that it has suffered both financial injuries as well as "irreparable harm not compensable by any award of monetary damages." (*Id*.) Rimkus now brings claims for relief against Defendants for breach of contract, misappropriation of trade secrets, tortious interference with contractual and business relations, unfair competition, conversion, and conspiracy. All three Defendants move to dismiss Rimkus' action in this Court on the basis of lack of personal jurisdiction and improper venue. In the alternative, Defendants move to transfer this case to the Middle District of Florida.

## II.   MOTION TO DISMISS: PERSONAL JURISDICTION

### A.   Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the U.S. Constitution. *See Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, this Court's sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. *Religious Tech. Ctr. V. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); Tex. Prac. & Rem. Code §§ 17.041-17.045.

The focus of the applicable due process inquiry is whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l*

*Shoe Co.v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contact with a state if 'the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 474 (1985)). "There must be some act whereby the [nonresident] defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*.

Minimum contacts can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Liebreich*, 339 F.3d at 375; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990). "[T]he focus [of this inquiry] is on the relationship between the defendant, the forum, and the litigation." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

When a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, a court may exercise general jurisdiction when the defendant has engaged in "continuous and systematic contacts" in the forum.

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004); *Nuovo Pignone,* 310 F.3d at 378. The plaintiff must demonstrate contacts of a more extensive nature and quality between the defendant and the forum state than those needed to support specific jurisdiction. *Dalton v. R & W Marin*, 897 F.2d 1359, 1362 (5th Cir. 1990).

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 205 (5th Cir. 2000). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469. "In determining whether a *prima facie* case exists, this Court 'must accept as true [the Plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation.'" *Freudensprung*, 379 F.3d at 343 (5th Cir. 2004) (quoting *Nuovo Pignone*, 310 F.3d at 378).

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of the jurisdiction is unfair and unreasonable." *Central Freight Lines v. APA Transport Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). "The defendant must make a 'compelling case.'" *Id.* (quoting *Burger King*, 471 U.S. at 477.)  In deciding whether it is fair and reasonable to require a non-resident to defend in Texas, a court must consider several factors: (1) the burden upon the nonresident defendant; (2) the interest of the forum state; (3) the

plaintiff's interest in securing relief; and (4) the interstate judicial system's interests in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*; *see generally Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 115 (1987).

### B.    Minimum Contacts: Balentine

We first take up the issue of whether Balentine had sufficient minimum contacts with this forum. Balentine points out that he is not a resident of Texas, does not maintain a physical place of business in Texas, owns no property in Texas, and does not have financial accounts, a mailing address, or a telephone number in Texas. (Def. Mot., Doc. No. 7-1, at 8-9.) Balentine also argues that "[Rimkus'] claims against Mr. Balentine do not arise from and are not related to any activity conducted by Mr. Balentine in Texas." (*Id* at 9.) Therefore, argues Balentine, he does not have sufficient contacts with Texas to warrant the exercise of general or specific jurisdiction over him.

Rimkus, however, points out that the Employment Agreement executed between Balentine and Rimkus contains a provision that states:

> [a]ny dispute or other proceeding to enforce the terms of this Agreement shall be adjudicated by a court of competent jurisdiction in Harris County, Texas. This Agreement and all rights, obligations, and liability arising thereunder shall be governed by, and construed and enforced in accordance with the laws of the State of Texas . . . .

(Pl. Resp. Ex. A-1, Doc. No. 14-2.). Rimkus also points out that Balentine had regular and frequent contacts with Texas because, for a portion of his employment, he reported directly to, and communicated regularly with, senior Rimkus employees based in Houston, frequently traveled to Houston, and administered CAT operations centered in Houston. (Pl. Resp., Doc. No. 14, at 6-7.) Rimkus argues that these uncontroverted facts,

combined with the forum selection clause of the Agreement, are sufficient to establish that this forum has personal jurisdiction over Balentine.

In cases of interstate contracts, parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647 (1950)). Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be looked at to determine whether the defendant purposefully established contact with the forum. *Id*. at 481-82. Choice of forum/choice of law analysis is, though, different and distinct from the personal jurisdiction analysis. Therefore, while not sufficient to confer jurisdiction when standing alone, a choice of forum clause is highly relevant to whether a defendant has "purposefully invoked the benefits and protections of a State's laws" for jurisdictional purposes. *Id*. The Court must also examine the nature and extent of the contractual relationship as well as its formation to determine whether personal jurisdiction is appropriate. *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985).

The Agreement at issue here clearly contains both a forum selection clause as well as a Texas choice of law provision. Balentine attacks neither the validity nor the enforceability of this provision. Thus, Balentine was clearly on notice that, as an employee of a Houston-based company, his actions were subject to the laws of Texas. While the Court notes that this forum selection clause does not automatically create personal jurisdiction in this Court, additional facts strongly support a finding of

jurisdiction. Balentine entered into a long-term employment contract with a Houston-based company. Over his year of employment, he had extensive communications with Rimkus personnel in Houston. He frequently traveled to Houston to meet with senior Rimkus employees. Several of his CAT and marketing projects presumably took place in Houston. Defendants' Motions do not call any of these facts into question. Considering the totality of circumstances, this Court finds and holds that Balentine's contacts with Texas satisfy the minimum contacts standard such that Balentine could have reasonably anticipated being haled into Texas court. As such, this Court can exercise personal jurisdiction over him.

###  C.  Minimum Contacts: USFA

Similarly, USFA argues that this Court lacks personal jurisdiction over it because it is a Florida corporation with no physical place of business in Texas, nor any financial accounts, addresses, or telephone listings. (Def. Mot., Doc. No. 7-1, at 10.)  Furthermore, USFA contends that Rimkus' claims against it do not arise from, and are not related to, any activity in Texas. (*Id.*) Rimkus however, presents uncontroverted evidence that USFA conducted catastrophe investigations in Texas, and listed Texas among its service locations on its website. (Pl. Resp. Ex. C, Doc. No. 14-4.) USFA also maintains a registered agent in Texas. (Pl. Resp. Ex. E, Doc. No. 14-6.) Finally, testimony of Balentine reveals that, since Hurricane Ike, USFA's main source of income has been from work being done in Texas. (J. Darren Balentine Dep., Pl. Resp. Ex. B, Doc. No. 14-3, 176:20-24, April 9, 2009.) Clearly, therefore, USFA has purposefully directed its conduct toward this forum such that it could have anticipated being haled into court here. Thus, this Court has personal jurisdiction over this Defendant.

### D.      Minimum Contacts: Janowsky

Janowsky points out that he is not a resident of Texas, does not maintain a physical place of business in Texas, owns no property in Texas, and does not have financial accounts, a mailing address, or a telephone number in Texas. (Def. Mot., Doc. No. 21-1, at 9.) Janowsky also argues that Rimkus's claims against him do not arise from, and are not related to, any activity conducted by him in Texas. (*Id*. at 10.) Therefore, argues Janowsky, he does not have sufficient contacts with Texas to warrant the exercise of general or specific jurisdiction over him.

In support of its contention that Janowsky has sufficient minimum contacts with Texas, Rimkus points out that Janowsky is registered with the Texas Board of Professional Engineers as a professional engineer. (Pl. Resp. Ex. A, Doc. No. 23-1.) Accordingly to Rimkus, Janowsky practices engineering in Texas on behalf of both USFA and USF. (Pl. Resp., Doc. No. 23, at 10.) Rimkus also points out that, except for the period of time in which Balentine was a co-owner, Janowsky was the sole owner of USFA, which conducted significant business activity in Texas. Rimkus further points out that Janowsky solicited business from, and marketed and oversaw the performance of services in, Texas. (*Id.*) Moreover, according to Rimkus, Janowsky, as owner of USFA, earned income and benefited directly from work conducted in Texas. Finally, Rimkus alleges that Janowsky hired Balentine primarily because of Balentine's extensive knowledge of and contacts within Texas, further illustrating that Janowsky reached out to this forum. Thus, argues Rimkus, Janowsky purposefully availed himself of the privilege of conducting activities within this state such that he could have reasonably foreseen being haled into Texas court in his individual capacity. We agree. Accordingly, we find

that we have personal jurisdiction over Janowsky. All three Defendants were therefore properly sued in this Court.

### E.      Fairness of Exercising Jurisdiction over Defendants

Having decided that all three Defendants have sufficient contacts with this forum, this Court must now examine whether it would be fair and reasonable to require the Defendants to defend this suit in Texas according to the *Central Freight* factors indicated above. All three Defendants argue that they would be significantly burdened from having to travel to and defend this suit in Texas. Balentine is a resident of the state of North Carolina. (Def. Mot., Doc. No. 7, at 12-13.) USFA is a Florida corporation with its principal place of business in Tampa, Florida. (*Id.*). Janowsky is a resident of the State of Mississippi. (*Id*. n.20.) Nonetheless, these Defendants' purposeful contacts with Texas and extensive business dealings with this state suggest that the burden would not, in reality, be so great. Furthermore, Texas has a strong interest in litigation concerning the theft of trade secrets from a Texas company. Rimkus, as a Houston-based company, also clearly has a strong interest in determining, in its home forum, whether its trade secrets were misappropriated by its former employee and used by a direct competitor to do business in its state.

Moreover, judicial efficiency is clearly better served by allowing this case to proceed here, as a case closely related to this one was brought in this District in 2007 and is still ongoing. (*Rimkus Consulting Group Inc. v. Cammarata*, H:7-cv-405 (S.D. Tex. 2007) (Rosenthal, J.) (the "Cammarata case")). In that case, Rimkus, as the plaintiff, brings nearly identical claims for relief against USF and its owners for misappropriation of its trade secrets. Rimkus alleges that USFA was actually formed as a shield in the

10

event that USF is unsuccessful in defending against that suit. Moreover, counsel in this case and counsel in the Cammarata case are identical. All of these factors weigh heavily in favor of the fairness and reasonableness of requiring the nonresident Defendants to defend against this suit in Texas. As such, the Court concludes that it has personal jurisdiction over all three Defendants, and that exercising this jurisdiction would be neither unfair nor unreasonable.

### III.    MOTION TO DISMISS: IMPROPER VENUE

#### A.    Legal Standard

Defendants alternatively seek to dismiss Rimkus' claims against them on the basis of improper venue. The United States Code instructs a district court to dismiss or transfer a case if venue is improper where filed. 28 U.S.C. § 1406(a). A party may move for dismissal of a suit based on improper venue under Federal Rule of Civil Procedure 12(b)(3). The movant bears the burden of showing improper venue in connection with a motion to dismiss. *Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)); *see also Myers v. American Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1983), *cert. denied*, 462 U.S. 1106 (1983); *Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729, 733 (E.D. Tex. 1998). In meeting this burden, the movant must show facts that will defeat a plaintiff's assertion of venue. *See Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1191-92 (10th Cir. 1998). 28 U.S.C. Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial

district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Here it is clear that none of the Defendants resides in the Southern District of Texas. Defendants argue that this case should be dismissed because, in addition to this fact, none of the events giving rise to the claim in this case occurred in Texas, and that, even if this Court does have personal jurisdiction over the Defendants, the Middle District of Florida is a more convenient forum wherein the action could and should have been brought.

### B.    Analysis

With respect to Balentine, as discussed above, the Employment Agreement between him and Rimkus contains an unequivocal forum selection clause. The forum selection clause is *prima facie* valid and should be enforced absent any evidence of unenforceability. *See, e.g.*, *International Software Sys., Inc. v. Amplicon*, 77 F.3d 112, 114-15 (5th Cir. 1996). Balentine does not challenge the enforceability of this clause. As such, the clause is valid and venue is proper as to him.

USFA argues that the alleged acts that took place in this case occurred in Florida, not Texas, and that venue is therefore improper under Section 1391. Rimkus, however, points out that its central database of clients and other information that USFA and Janowsky allegedly misappropriated is located in Houston. (Pl. Resp., Doc. No. 14, at 20.) Presumably, much of the information that Rimkus claims was protected was generated and developed in Houston. In addition, Rimkus accuses Janowsky of recruiting Balentine for the specific purpose of gaining information and access to business in Texas. Rimkus further alleges that USFA and Janowsky used this misappropriated  information

to obtain work from Hurricane Ike here in Texas, and that they directly profited from use of the information within Texas. Indeed, as discussed above, Balentine's testimony reveals that, since Hurricane Ike, USFA's main source of income has been from projects in Texas, the very work that Rimkus alleges was obtained through misappropriated information. Rimkus also alleges that USFA's actions impacted Rimkus at its corporate core, which is located in Texas. The Court finds that these facts are sufficient to demonstrate that a substantial part of the events or omissions giving rise to the claim, and a substantial part of property that is the subject of the action, are within this forum. As such, venue is not improper under 28 U.S.C. Section 1391(a).[2]

## IV. ALTERNATIVE MOTION TO TRANSFER VENUE

### A. Legal Standard

In the alternative, Defendants argue that this case should be transferred to the Middle District of Florida pursuant to 28 U.S.C. Section 1404(a). Under 28 U.S.C. Section 1404(a), a correctly filed case may be transferred to another proper venue "[f]or the convenience of parties and witnesses, in the interest of justice." Defendants, as the movants under Section 1404(a), bear the burden of establishing the propriety of the transfer. *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc). The movant must "show good cause." *Id.* (citing *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963)). Good cause means that "a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and

---

[2] In its briefs, Rimkus also argues that both Janowsky and USFA should be bound by the forum selection clause of the Agreement signed by Balentine, because they are closely related to the dispute between Rimkus and Balentine and it was foreseeable that they would be so bound. *See Moreno Enterprises of Kansas v. Z-Texas Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001). However, because the Court has found that the facts of this dispute sufficiently demonstrate that venue is proper as to all Defendants, it need not address this argument.

clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315 (distinguishing the heavier burden under the *forum non conveniens* standard where the movant must show that the factors "substantially outweigh" the plaintiff's choice of venue).

Although a plaintiff's initial choice of forum is entitled to deference, the degree of deference is higher when he has chosen his home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Conversely, when a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice. *See In re Horseshoe Entm't.*, 337 F.3d 429, 434-35 (5th Cir. 2003); *Apparel Production Services Inc. v. Transportes De Carga Fema, S.A*., 546 F. Supp. 2d 451, 453 (S.D. Tex. 2008); *Dupre v. Spanier Marine Corp*., 810 F. Supp. 823, 828 (S.D. Tex. 1993).

The Supreme Court set forth private and public factors to be weighed in a *forum non conveniens* determination in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and reaffirmed them in *Piper*, 454 U.S. 235 (1981). The Fifth Circuit then adopted the *forum non conveniens* factors for the Section 1404(a) context. *Humble Oil*, 321 F.2d at 56; *In re Volkswagen*, 545 F.3d at 314 n. 9. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 314 (citing *Piper Aircraft,* 454 U.S. at 241 n. 6). The public

interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Even a valid forum selection clause is not dispositive and does not compel transfer if the factors listed in 1404(a) militate against transfer. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

### B.     Analysis

As stated above, the forum selection clause clearly governs Rimkus' actions against Balentine and establishes that the action against him should be litigated in this forum. As far as USFA and Janowsky, the Court first notes that Rimkus has chosen his home forum, and its choice is therefore entitled to a high degree of deference. Moreover, in light of facts listed throughout this Memorandum that  demonstrate this case's connection with the state of Texas and the likelihood that many witnesses and other evidence will be located here, it is not clear that the convenience of the parties and witnesses will be better served by transferring this case to Florida. Indeed, that Janowsky is a resident of Mississippi suggests that litigating in Texas presents no greater geographical inconvenience to him than litigating in Florida. Furthermore, judicial efficiency is clearly better served by allowing the case to proceed here, where the Cammarata case is also ongoing and where much of the factual and legal issues likely to be implicated in this case have already been analyzed and fleshed out. In light of these factors, and the fact that venue is proper, the Court concludes that Rimkus' claims against the Defendants need not be transferred.

### V.     CONCLUSION

For the reasons stated above, Defendants Motions to Dismiss (Doc. No. 7 and 21) are hereby **DENIED.** In its original Complaint, Rimkus moves for injunctive relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction. In light of this Court's holding that it can exercise jurisdiction over these parties, these motions as docketed (Doc. No. 3) are **TERMINATED WITHOUT PREJUDICE** to refiling if and when Rimkus chooses to pursue these forms of injunctive relief and brief them more extensively.

**IT IS SO ORDERED**.

**SIGNED** this 16th day of February, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE